Let us know your names and who you represent, please. Good morning. You don't have to introduce yourself. I'm William P. Murphy. This is my partner, Kristen Frost. And who's going to be arguing today? I am, Your Honor. Okay. The usual rules will apply. We give 15 minutes per side. Keep some time for rebuttal. And if you go a little long today, it shouldn't be a problem. We don't have a case after you. The microphone is not for amplification but for recording, so keep your voice up for the hearing impaired. Thank you. Please proceed. Your Honor, would you like me to reserve a certain amount of my 15 minutes for rebuttal? Don't worry about it. Okay. Thank you. Good morning, Your Honors. As Mr. Murphy said, we represent Asher Hidou in this case. First, I'm going to address quickly the last issue we raised, just because the State has conceded it, that the intentional murder conviction needs to be vacated on the minimis, and the minimis needs to be corrected in this case because the trial court erroneously entered two judgments of convictions for first-degree murder. The State's conceded it. I don't think it's an issue. I would ask, though, that the case gets remanded for resentencing. Why would that require resentencing? It doesn't necessarily, but that is an available remedy based on the case law. But why do you think it's justified in this circumstance based upon just a one-act, one-crime concession? Because Mr. Hidou has the right to that remedy under the case law. Always? According to the case law, not necessarily. It's at the discretion of this Court. And we should exercise that discretion because? Because, again, Mr. Hidou has the right to that remedy. Well, he has a right to it being considered. But the question is how, what is your theory of prejudice, assuming that that is the sole remedy that comes out of this appeal? Well, I would argue. Because the judge clearly knew the circumstances of the acts, the background of both the defendant and, indeed, the victim. It was brought out ad nauseum in this case. And there is nothing that would be said that would not have been presented to that judge in the first place. And with that concession by the State, there would still be, assuming nothing else changes in this appeal, a first-degree murder conviction. Yes, Your Honor. But nonetheless, there are two convictions right now, one for intentional, one for knowing. And I would argue that there is a prejudice. And that could have impacted the trial court's decision and the sentence imposed. We don't know. Because we don't know, Mr. Hidou has a right to a fair sentencing hearing. And I would ask that the Court remand the matter. You've got bigger fish to fry, so let's move on. Thank you, Your Honor. This case is a case where the defense presented evidence of provocation, where there was evidence of imperfect self-defense. And at most, Mr. Hidou is guilty of second-degree murder, at most. In this case, as the Court just pointed out, the background of Israel Moreno, Kiki the victim, was brought out ad nauseum. There was character evidence introduced that Kiki was a violent, aggressive man. There was evidence of specific instances of violence. We know that Kiki was an active Latin Count member, that his nickname was Drack. We know that Kiki was at the Claudio's house in violation of a protection order and was currently subject to criminal prosecution on the date of the incident. Kiki was described as wild and scary. Kiki's violence escalated in the month prior to the incident. He terrorized the Claudio family. Vanessa broke up with Kiki, Kiki didn't like that, and Kiki wanted her back. Sorry to interrupt, but in terms of the timing, you mentioned that it was about a month before, and we've all read the records so we're familiar with just how bad a guy he was and the way he expressed it against this entire family. But in terms of the timing, about a month, how long before this incident did the defendant get his knife? The defendant testified that he purchased the knife a month before the incident for $10. So you're talking roughly around the same period of time. About a month before, this guy starts really harassing this family, to put it mildly, and at the same time, this young man who was fond of this family acquires a knife. Yes, Your Honor. And the record indicates that the reason that Mr. Hedo purchased the knife was in order to protect himself. The record indicates that he had been jumped about a month earlier. He was under the impression that Kiki and Kiki's cohorts were responsible for jumping him. Isn't the whole issue of whether it was first-degree murder, second-degree murder, or indeed self-defense, contingent upon the prior effect's determination of the credibility in this case when you consider the testimony of Greg and the testimony of the defendant, which, after all, are the two key witnesses who testified in this case? If you were to believe the testimony of Greg, as the court apparently did, and I guess I can strike apparently stated very clearly he did, doesn't that support a finding of first-degree murder? And if not, why not? I would argue no, it doesn't support a finding of first-degree murder because the trial court, you're right, Your Honor, in his ruling was very clear that he did not find Mr. Hedo credible and that he found Mr. Lassen credible and ruled in the way he did. That finding doesn't consider all the evidence, and it was erroneous. Because even when looking at Greg's... the belief that anything not cited by a judge in announcing his findings on a case, as opposed to mis-citing evidence, should be interpreted by us as indication that he didn't hear or misheard the evidence. And I'm searching for any citation to authority on that. Indeed, everything I know leads us to the opposite conclusion, that a judge need not cite all of his or her reasons for reaching a decision, and that one cannot presume because that judge did not cite a specific fact in the recitation of the basis of his or her ruling that they didn't hear the evidence that they didn't recite or misheard it. Your Honor, may I answer your first question before I address this question? No, either way. Okay, just to finish up the point I was talking about as far as the sufficiency of the evidence of first degree or second degree murder, when looking at Greg Lassen's testimony alone, he is obviously the only witness the State presents that witnesses this fight. Every other witness is irrelevant as far as how this fight starts and who does what. Greg Lassen... Well, no, I don't think that's necessarily true, but he's a direct eyewitness to how it started. There are other circumstantial pieces of evidence, such as the remarks that were reported to have been stated by the defendant after the stabbing, wishing for him in the most profane way to die, and statements relating to the number of stab wounds and the location of the stab wounds, and the statements relating to what would seem to otherwise be an irrelevant acknowledgement of his gang affiliation, which would seem to be largely irrelevant to a self-defense claim. So there's circumstantial evidence that would support it, given by other witnesses, but I would agree with you that the only two witnesses who gave a step-by-step recitation of the events leading to the stabbing were Mr. Lassen and the defendant. Yes, and as the Court points out, there's circumstantial witnesses that give other evidence that is used by the trial court to make inferences, but there's also other circumstantial evidence going to Kiki, statements Kiki makes, and how this fight begins. And going back to that point, Mr. Lassen is the key witness. The State naturally has to prove its case beyond a reasonable doubt, and it's based on Greg Lassen's testimony, which is inconsistent about who throws the first punch or how this fight starts. On direct examination, Mr. Lassen is very clear when he says that Kiki or I'm sorry, Mr. Hidoo approaches Kiki. They're standing face-to-face. They're within striking distance. Kiki picks up his left fist and goes to hit Mr. Hidoo. Mr. Hidoo pulls the knife out at the same time. Okay. I have to call you on that. I've got to call you on this. In your brief at page 31, you say, Greg testified that Kiki went to hit Asher, and that is when Asher pulled out the knife. That's your representation of what the testimony is, right? May I grab my brief? I'm quoting from your brief at page 31, where you cite incorrectly volume one. You cite three different volumes for this witness's testimony within your brief, but I think it was volume six. You said, Greg testified that Kiki went to hit Asher, and that is when Asher pulled out his knife. That's what you represent the facts are, right? Yes, Your Honor. That's not what he testified to. That's a misrepresentation at best. Because if you want to cherry pick from this important witness's evidence, evidence that is helpful to the defendant, the best that he said is that it was simultaneous. Knife and arm go like that. That's not what he said. He didn't say what you represented. And in fact, when pressed on further examination, and in fact cross-examination, he said quite the opposite. So on an important issue, who's the aggressor, is this mutual combat, or is the defendant initiating it, I think your brief misrepresents what actually was testified to at trial. Okay. Your Honor, then it was a choice of wording, and it was not anything intentional, and I would point the court to page 18 of my reply brief. Yeah, I saw that reference. In the footnote? Yes. Proceed. Greg Latson's testimony, whether on direct examination, he says it's a fist and a knife contemporaneously at the same time. When on further cross-examination, he then changes his testimony, and he says that Mr. Hedo pulled out the knife first, and then Kiki went to punch Asher. So his testimony is inconsistent on a very important point about how the fight begins. And so based on that testimony... So the inconsistency allows the trier of fact to determine whether to believe the witness' testimony or which part of it to believe, and that is uniquely the trier of fact's purview to do so, isn't it? It is certainly credibility. Determinations are the trial court's job. None of us were there, and that's why case law will give deference to the trial court's findings on credibility. However, and this goes back to the point that you had asked me about early regarding the due process violation and what my argument is there as far as the court's ruling, I just want to specifically frame the issue, because this isn't a case where we're saying that the trial court incorrectly recalled the facts. This isn't the case where we're saying that the trial court ignored evidence that was crucial to the defense. This isn't a case where we're saying that the trial court improperly gauged witness testimony and the credibility of it, which I think was kind of the fact scenario that you asked me about. This is a case where the trial court didn't consider an entire substantive offense. How do you know that? Because looking at the record, at the beginning of his ruling, the trial court says, I've got three options, and acknowledges all three options. The trial court then talks all about the aggressor, about credibility determinations, the fact that he believes that Mr. Hedo was the aggressor, and convicts him. At no other point in considering all the evidence related to provocation and or unreasonable belief in self-defense that was admitted, the trial court never once acknowledges that. Wait. Doesn't that completely contradict the preamble that you just gave me? The court evidenced clearly an understanding that he had three choices before him, including second-degree murder, and then went on to say why he thought it was first-degree murder. And you are extrapolating from the fact that he didn't discuss why he didn't think it was second-degree murder, that even though he brought it up, that he never considered it. Isn't that what you're doing? No, Your Honor, I would disagree, and in fact, I would point to the Washington case, which I referred to. I'm just talking about how he thought about it. I mean, you're basically saying he didn't consider that. But he did consider it. He said he considered it. And he didn't even have to say that under the case law. But he did say that these are my three choices, and this is why I'm picking this choice. I would disagree with the fact that he didn't say this is why this is my choice. He said this is why this is my choice on first-degree murder and denying self-defense. And you're saying that because he didn't expressly state the reason why he didn't find second-degree, that that is somehow to be taken by us as the fact that between the time he stated that was his option and the time he finished his determination, that he somehow forgot that he had that option? I don't know what was going on in his mind, and unfortunately, I can't tell the court. But the point is there's two additional elements the court knows, the two mitigators, and the trial court never once applies a single fact in application to those two elements. And ignoring those two elements on the lesser mitigated offense of second-degree murder, I would argue is analogous to not giving a jury an instruction on that offense. The jury needs to be instructed on the law because they are lay people. The judge, as case law for 100 years has set out, is presumed to know the law. And in this case, we don't have to take it on faith because the judge said these are my three options. This is not at all analogous to not giving a jury an instruction. It's quite different. And, Your Honor, I would agree with you in the fact that the trial court is presumed to know the law. However, according to the case law, there's a rebuttable presumption that trial judges are human beings. Trial judges do make mistakes. Now, if he had misstated the law and shown that he was not conversant with the criteria, as opposed to simply not addressing it, that would be a different situation. Indeed, all he would have had to have said is I find the defendant guilty of first-degree murder. Wouldn't you agree? He wouldn't have to explain himself. A jury doesn't have to explain itself. And, you know, I disagree that that would have been sufficient in the sense that... Really, a judge is, in your view, and this is a linchpin of your argument, required to explain in announcing its findings why it did it. Now, I'm saying it's good practice, but... No, certainly the case law does not require a judge to do that. That's not what I'm arguing whatsoever. I'm arguing that there's a difference between a trial court not explaining its rationale and a trial court ignoring an entire substantive offense that is an option for him to convict. He doesn't apply any evidence that was admitted to any of those mitigating factors. But when you say he doesn't apply it, what you're saying is that he didn't, to your satisfaction, articulate it clearly on the record that that's what he was doing. He may have done it and followed option and discounted in his mind but didn't articulate to you, to your satisfaction, that there is enough evidence for second-degree murder. Right, which is tantamount to making a mistake of law, not just... I think you have a problem with us accepting that, though. We understand your position, however. Yeah, we do understand your position. Let me ask you if you could move on to the ineffective counsel argument. Sure. I would argue, as stated in my briefs, that the court has to look cumulatively at numerous instances of ineffective assistance to counsel because, in totality, Mr. Hedo was deprived of his right to effective assistance to counsel. What would you give us as, let's say, the top two or three shortcomings, to use a generic word? And, Your Honor, in my review of the record, I saw so many instances that it would be hard to pick the top two, but... Well, just in terms of what was it, in your estimation, was most prejudicial to Mr. Hedo's right to get a fair trial from this trial judge? First of all, failing to argue for second degree in both opening and closing, and the record indicates that his trial counsel did not have an understanding of the legal difference between the two. They put on, obviously, evidence in attempting to get to second degree, and that's why, as the court pointed out at nauseam, we hear about Kiki, his violent history, his character for violence. But yet, they don't ever argue that this was a mutual combat situation. They don't argue... However, if we were to reject the argument you've just made and accept the fact that the judge, based on what he said, did consider second degree, how would that involve the second prong of Strickland? In other words, what would be the prejudice if, in failing to argue that to a trial court judge, the trial court judge nonetheless considered and rejected it? Because if it was argued and put in front of the trial judge and argued effectively and zealously, as an advocate would do, the trial judge might have completely ruled in a different way and convicted Mr. Hedo of second degree murder. But the trial judge was deprived of ever even having the opportunity to hear counsel argue that. So I think I understand what you're saying, and I can appreciate it from reading the record that it was not mentioned in opening or in closing, and you're faulting them for failing to hammer home their theme that this man should be convicted of second degree murder, not first degree murder. Which is, yes, a huge, I don't have to tell the court. The court knows. There's a huge difference between the two. And to, I guess, supplement the prejudice on that, they then, when presenting evidence pertinent to both provocation and or imperfect self-defense, can't lay a proper foundation, have struggled getting evidence in that would have been pertinent to second degree. So Mr. Hedo, in totality, was kind of deprived in second degree to an extent because not only did they not argue for it, but they can't lay foundations. They can't get them to evidence. What evidence was there that you think, in terms of what is over broadly called lynch material, because, of course, lynch material is material that would be unknown to the defendant and really we have not only lynch material presented to the judge, but we also have evidence of bad acts and violence that were known to the defendant that were presented to the judge. It's all in evidence. What is there that was not in evidence that you think would have made a difference and then how are we to know that it wasn't in evidence based upon the record? And, you know, first of all, there's the statement and it never comes into evidence, it looks like, from the record. But honestly, this record was so difficult to ascertain at some point what the lawyers were trying to do. But there's a statement that Kiki had made to Anthony Claudio, the only way out of the gang is through a body bag. That never ever eventually comes in. They struggle, they try, there are sidebars, but it's an instance of one piece of evidence that further goes to, you know, who Kiki was as a person and that would support the imperfect self-defense. Well, I'll give you one. In the cross-examination of the eyewitness, Greg, the defense lawyer asked the question, isn't it a fact that Osher pulled out a knife and stabbed him immediately without hesitation as soon as he came up to Kiki? That's the defense lawyer's question. And on that point, Your Honor, going back to what you had asked for specific examples of what was, I would say, not trial strategy but ineffective assistance of counsel, defense's decision to recall Greg Latson on its case in chief, I would put that to the court as probably one of the most salient examples of prejudicial trial calls. If it were in front of a jury, I think your argument might gain more legal purchase in this specific regard. And again, I would just point, Your Honor, to the inconsistency in Greg's testimony. When they recall Greg Latson, they ask questions like you have just identified and they're actually damaging their defense by doing that. And Greg Latson then is given the opportunity to change his testimony, to clean up his testimony, and they're also just giving, even though they're not in front of a jury, they're giving the trial court another opportunity to hear from Greg Latson and that was not strategic in any way, shape, or form. Well, at least you're claiming it wasn't good strategy. Well, I'm claiming it was prejudicial and that it wasn't strategy at all. Not just bad strategy. In a bench trial, it's different than the construct of a jury trial. The judge is going to make credibility determinations based upon their observations, the inconsistencies in the testimony. And indeed, as you pointed out, one of the results of Latson testifying a second time is the creation of an inconsistency, isn't it? Yes, Your Honor, but at the same time, his testimony when he was a state's witness was actually testimony that supported mutual combat. There's no reason. Well, except though, sometimes, and experienced trial lawyers try this all the time, sometimes you try to push a witness adversely into a position that may at first blush look to be more damaging, but the inconsistency would show that witness's lack of credibility and prejudice against the person against whom he's testifying. I'm not saying that's a good idea all the time, but I've seen it happen. It's kind of like judo. You push somebody in the direction they think they want to go. And in any event, it's all contingent upon, even if you get past the trial strategy, it's contingent upon what prejudice ensued, considering that this is a pension trial. And, Your Honor, there is absolutely no reason in this case whatsoever, from a strategic purpose, to try and recall Greg Latson to damage his credibility and get some inconsistency when they had already gotten clear testimony that supported mutual combat on his direct examination, cross-examination when he was the state's witness. On the state's direct examination. Exactly. That's what I meant. You had that little possibility that it was, you know, the knife and the arm at the same time. Simultaneous. Mutual combat. Why don't you wrap up? I think we've had enough mutual combat here this morning. Unless there's something else you really want to. I just wanted to point out, you know, there has been a lot of distinctions between a bench trial and a jury trial, and naturally they're real.  Sort of important in this case, given the arguments that you're making. But nonetheless, Mr. Heaton's right, his Sixth Amendment right to counsel, that doesn't change based on whether it's a jury or a judge. His right to due process doesn't change. His right to a fair trial. His constitutional rights remain the same. The burden is on the state to prove their case beyond a reasonable doubt. And the defense did present evidence by preponderance of second degree. And I would ask this court to vacate the first degree conviction and reduce this to a second degree case. In the alternative, I would ask for the court to remand this matter based on the constitutional violation for a new trial because he did not receive effective assistance at counsel. Thank you. Thank you. Good morning, Your Honors. Marcy Jacobs, Assistant State's Attorney for the people of the State of Illinois. Very briefly, on the first issue with regards to whether or not this judge considered the issue of second degree, I do want to just point out one thing that was not said, which was he did consider. He did consider. He didn't ignore it all. He actually stated on the record. In defendant's brief, she says that the judge never considered any issue of defendant's injuries. And here's, quote, what the judge said in his ruling about the defendant's injuries. Ray Ray saw the defendant's injuries and he tells me about those injuries and I have a clear understanding about those injuries. Mr. Hisu's injuries and he had injuries were consistent with the testimony of Mr. Latson. On the struggle, of the struggle he had with the defendant, he kneed him in the face and the victim was in combat with him. He also, the defendant's brief also pointed out that he never ever touched on any of the assaultive and violent behavior that came from, that the defendant was aware of the victim. Here's what the court said on the record during his ruling. Defendant testified that on a previous occasion he'd been jumped by two people that he thought was the victim and someone else. There was bad blood between the defendant and the victim. A rivalry, antagonism that goes beyond gang issues. It's very personal. The court also noted that when the defendant saw the victim, he thought, it was my time, they were going to kill me. So he did consider what was going on in his mind. He did consider evidence of this second degree stuff as well, just to make that point, because all the other points seem to have been made, unless there's any other questions on that issue. I'd also like to quickly just talk very briefly about mutual combat, to point out that this was never ever an argument, a theory that was presented at trial. And not only was it not a theory presented at trial, it was not a theory that out of all of the ineffective assistance accusations on appeal, they didn't even accuse the counsel of being ineffective for not presenting this theory at trial. So it was not presented at trial, and that's simply because there's no evidence of it at all. Illinois says that mutual combat must be fought on equal terms. And that mutual combat does not apply where a defendant retaliates completely out of proportion to provocation. And one who instigates a quarrel cannot rely on the victim's response as evidence of mutual quarrel. We have all three of those factors in this case, which shows that, especially now in the light most favorable to the state, the evidence that the defendant was the aggressor, that he used excessive force, and that he and the victim did not fight on equal terms, mutual combat was simply not an issue in this case. Moving along to, I mean certainly the defendant is, moving along to the issue of whether or not first degree murder was established on the record, certainly in the light most favorable to the state, we think it was overwhelming. Certainly defendant is entitled to his interpretation of the evidence, but the trial court made very clear what his interpretation of the evidence was, and it simply cannot show that no prior effect could have found the essential elements of first degree murder beyond a reasonable doubt. They talk on and on about the history between the victim and the defendant, and I'll just point this case to People v. Simon, which is considered very similar issues, and is quite on point, where that case considered very much the same thing. It considered the defendant's account, it said even if the defendant's account of the history with the victim is true, you know all these bad previous things that had happened between them, those facts were not the only facts and evidence. While the victim's history of violence toward defendant may be relevant to determining whether defendant had an actual belief and a need to use self-defense, his behavior during the altercation should also be considered. And that court noted that the defendant came to the scene armed with a gun while the victim was unarmed. That court also noted the defendant fled the scene and did not call police. That he, in that case, that he yelled out a gang slogan and made out other comments indicating no remorse over the killing. And that the trial court determined that the defendant's testimony was not credible. This case is on all fours, regardless of how they want to interpret the evidence in this case. And I also do want to point out too that a lot was talked about that inconsistency in Greg Latson's testimony. It is not an inconsistency, it was a clarification. Because here's what Greg Latson said on direct. The question was, and what did you see happen next? Greg says, I saw Asher pull out a knife, a large knife, comma, and at the same time Kiki swung with his left hand, I saw Asher stab Kiki right here under his left side. So in the light most favorable to the state, we're going to interpret that as he pulled out the knife and then the hand was raised and the stab was at the same time. And as a clarification, so that we know that we're not just interpreting that in the light most favorable to the state, we know that that's the true interpretation, because on cross-examination, he was asked again. So when you turned around, the first thing you saw was Kiki swing? And Greg says, no, I saw him. I saw Asher pull out a knife. So we know that that is, in fact, the correct evidence that we must consider. It was not at all in any way inconsistent. It was a clarification. And I also want to point out that some of the other witnesses that were saying weren't important, you know, Greg is the most important one, but there was other witnesses that corroborated very important parts of his testimony. I mean, when we're talking about whether or not he's the aggressor, the fact that he walked away and that Ray Ray sees him walk away, Vanessa sees him walk away, those are corroboration of what Greg said. And those are very important witnesses to corroborate, to give Greg Latson the credibility that he deserves. You know, I can go through all the evidence, but, you know, our position is absolutely first degree murder without question, overwhelming evidence of it, especially in the light most favorable to the state. I'll talk briefly about the ineffective assistance of counsel because I want to get to one more issue that you didn't really touch on that I think you might want to ask me about, which is about the initial aggressor. So I'm going to talk briefly. So I'll just talk briefly about the ineffective assistance. First let me point out that with regards to the overall ineffective assistance of all of the myriad claims, this is what the trial court said after arguments. The trial court thanked all the attorneys for an excellent job. Please don't go there. Okay, okay. We try to be pleasant. Okay. We sometimes fail. Okay. But, you know. Okay, well, and then let me just touch on the next point, which is. You can't read this record and view that statement as anything other than a judge being overly polite to lawyers. Okay. I like what he said to me. Despite what happened. Just kidding. Okay. He might say it to you today. Thank you. You never know how sincere we are. Okay. Sure. Okay. Obviously since the evidence of first degree murder is so overwhelming and the defendant absolutely cannot show that no trial or fact could have found this, there is no prejudice. And we've already touched on that. I thought your summary of the evidence on page 47 where you're talking about ineffective assistance was pretty compelling. There is a lot of proof out in the record there about him leaving and, you know, forget about the story about his sister honking the horn and then all of a sudden he magically. There was premeditation. There was. He heard the honking. What I'm trying to get to is that I see all that and I accept it. But when I read the cross-examination of Greg by the defense lawyer and hear leading questions asked that sound like they're from the prosecutor, I'm troubled. Well, I will tell you. I shouldn't be? I will tell you my interpretation. First of all, just briefly before I get to that, the extensive lynch evidence that was allowed, the extensive evidence of his knowledge was allowed. There was no issue. They laid the foundation. It all came in. Obviously the foundation was lied. So that wasn't an issue. I will start first with Greg Latson being why they called him on rebuttal, which while if you look in hindsight, the defendant doesn't agree with that strategy now, but there was a strategy for it, and this is what it was. When he called Greg Latson in rebuttal, he asked him to admit pictures of Greg Latson when Greg Latson was at the station, that were taken of Greg Latson when he was at the police station. And what were in those pictures, which he later argued, was that he was wearing gang colors. He also argued that there was two hats with the gang and the sign and the C. And he also asked him about his injuries. And that enabled him to argue that Greg was far more involved in the fight than just pulling the thing. So he had a strategy. It was a strategy. He had a reason. He wanted to be able to argue that Greg, he put him up there for one reason. Here's a picture of you in gang colors. And so he can argue the gang angle. So it's a strategy, regardless of not, in hindsight, it wasn't the best strategy. With all of the literally, I don't know how many, 30 other incidences, I will tell you the one that I read twice was the one that you picked out. And when I reread the transcript, all I can tell you is there were two questions, not one, and it was at the end of the testimony. And the question that came after the one you quoted was, immediately upon first, as soon as he came up to Kiki, he just pulled out the knife and stabbed him. I mean, to me, this could have been sarcasm. We don't know. It's a cold record. We don't know the tone in which he said these things. I mean, obviously, Greg Lassen was solid, and he was saying the same thing over and over. And so what else do you have at this point? You just have, so that's what you're saying. That's just so likely that he's just going to pull out this giant knife. But look, I mean, there's no prejudice. The evidence was so beyond overwhelming. No defense attorney could be 100 percent perfect, even if you don't want to look at this. It's one question out of an entire record of loads and loads of really working hard for this guy, putting in every bit of evidence he could get in to show what a bad guy the victim was and how he knew it. So, no, I don't think the ineffective assistance of counsel claim can go anywhere. There's absolutely no prejudice. Did you want to discuss an issue that was not brought up? No. Everyone's okay with if I'm an initial aggressor, second degree doesn't apply? Everyone's okay with that? Okay. If you have any other questions, I'd be happy to answer them on any issues. Otherwise, I would just ask you not to reverse this conviction. The defendant has shown you on no basis whatsoever of how much it should be reversed. Thank you. Thank you very much. Counsel. Thank you, Your Honors. I'm just going to go quickly backwards based on one of the last things the state's attorney's office just stated. They're trying to claim that it's trial strategy, that defense counsel was able to talk about gang evidence and the colors that Mr. Latson or Kiki were wearing. There was nothing strategic about that. It was very clear and came out during the state's case in chief that Kiki's a Latin count. Greg was portrayed differently, though, wasn't he? Was he portrayed as being, you know, an honestly employed guy who was unaffiliated and just came over to see his buddy Kiki? The state portrayed him that way. The defense had the opportunity to cross-examine him. The defense could have used those pictures to cross-examine him and not have recalled him to the stand in their case in chief. But having not done so, there is at least an arguable strategy, is there not, to recall him to do that which they didn't do on cross-examination? Yes, Your Honor, but again, with the facts of this case and with Greg's testimony that was not strategic on behalf of defense counsel. What you're really saying is it wasn't good strategy? No, it was ineffective assistance of counsel. They attempt to impeach him. They attempt to say, oh, you were wearing this color or that color. You must be in a gang. And Greg naturally says no. And, you know, all that did was buffer his credibility for the trial court who ends up then convicting Asher based on Greg being a credible witness. So that's the prejudice. And if they wanted to do that to Greg, it's a lot easier to do it on cross-examination than it is on direct examination? Right. And then coupled with the fact that they call him back in their case in chief and with the fact that they give him the opportunity to give inconsistent evidence as to how this fight begins, they give him the opportunity to give evidence that damages the defense of mutual combat. Coupling all of that together, that is ineffective assistance of counsel. That is not bad trial strategy. That's not, you know, making a mistake as a defense attorney. Certainly I'm the first person to admit that no defense attorney is perfect. This isn't an example of imperfect defense attorneys making strategic calls or mistakes. This is ineffective assistance of counsel from the beginning of the trial when they're having sidebars on the record about what evidence is coming in pursuant to the defense's general motions in limine up through closing argument. Ineffective assistance is peppered all over this record. Second, in regard to the state's contention about premeditation, I would point this court to facts in the record. First of all, that Mr. Hidoo would have premeditated this murder. He didn't even know that Kiki was going to be around the Claudios that evening. How would he have, you know, formed the intent? I don't know how long the premeditation has to be. I mean, you know, let's see. He hears him talking outside and calling his friend's name and then decides to go out with the knife he had been showing off to the other members of her family. That could be provocation, Your Honor. The problem I think you have is that the trial court clearly did not believe the defendant's story that the only reason he was outside is because he thought his sister was there waiting for him and that that was made up and that he went outside because he was calling after Nessie. And that's the judge evaluating the evidence and not believing what the defendant testified to and instead believing the other evidence in the case. Well, then I'd like to turn to quickly another point, and I agree with the court's assertion of the trial court's ruling. Look at the evidence that came from Ray Maldonado, for instance. Let's move away from Mr. Hidoo's testimony. Ray Maldonado testifies that he hears Kiki saying, that's what we are on and what's up, bitch, pardon my language, when Mr. Hidoo walks up to him. That's evidence of a man that's not running away, and granted there's no duty to retreat to the wall, however, those are fighting words. And those were Kiki's words, and that evidence came from Ray Maldonado. That didn't come from Mr. Hidoo. And conveniently, Greg Latson didn't testify to that. Greg Latson omits that. But that's what we're on. Assuming it's true, which the judge may have found was not true. Well, the trial court found Mr. Maldonado, Ray Maldonado, to be credible. I mean, he may not have believed that part of it. Who knows? I mean, this whole construct, you don't necessarily credit everything a witness says or discredit everything a witness says. Sure. Agreed, Your Honor. But then I would like to point you to the fact that you say that somebody conveniently left something out. It may well be, and the court may have well found, that either it didn't happen or that he was unsure whether it happened. Sure. And so I would point you to another fact in evidence that came from the Claudio family, I believe. Angelo Claudio, Anthony Claudio, as you said, stated that Asher displayed the knife to them earlier that evening. Again, premeditation. If they're premeditating murder, who is displaying their murder weapon that they've planned to use to kill someone in public around witnesses earlier that evening? It doesn't make sense. So they were lying when they said that? No, not whatsoever. I'm saying the inference that that fact shows that he's premeditated the murder with the intent sufficient for first degree doesn't add up. Well, isn't it testimony that he's showing the knife before there was any yelling from the street by the deceased? Sure. Yes, it is. So the question then arises, as Justice Lavin asked, when does the premeditation have to occur? Because if you didn't know that the person was outside at that point, you obviously wouldn't have at that point a reason to premeditate a response to that. But having later found that he is outside in violation of the orders and calling to the person he's supposed to be leaving alone, and having previously displayed this weapon, isn't it possible, and isn't it really what the court has found here, that the determination to do something about that offensive circumstance arose right then? Well, Your Honor, possibilities aren't at issue here. The State has to prove Mr. Hedo guilty beyond reason. No, I'm talking about what the court found. What the court's finding has to be that the State satisfied every single element beyond a reasonable doubt. And so possibility, sure. It's just as possible, Your Honor, that Mr. Hedo was provoked by that. It's just as possible that's why he walked outside. I think it's also possible that he thought his sister had beeped the horn, but I don't think anybody believed it. Okay? I don't think the trial judge believed it. And that's sort of a fundamental issue that you have here in terms of mutual combat, initial aggressor, premeditation. All of that can come down to the way the court evaluated the testimony that here's this guy who nobody likes, who's a threat to this family and who has expressed it in many ways, and he's out there again. And he's yelling up, and then he decides to go outside. And that's what the court was relying on, the evidence. Wasn't the court also relying on, I mean, Judge Juan Adersweit say he, the defendant, said that he was swinging the knife wildly. And then he talks very specifically about the depth of the eight wounds and their location and how this wasn't swinging wildly. And that, to me, was the sort of linchpin of his whole decision. He just didn't believe the defendant in this mutual combat sort of scenario because it was very directed. The wounds were very directed. Well, and yes, Your Honor, I agree with what you're identifying in the record. That was a fact that the court definitely looked to. And I would actually tie that, again, back to my ineffective assistance of counsel argument. How is counsel supposed to keep those eight wounds being clustered? Oh, no, and I'm not suggesting that. Counsel can certainly prepare Mr. Hedo to explain or ask the question, when you say swinging wildly, what do you mean by wildly? And take Mr. Hedo in his direct examination step through step about how this fight happens and how there would be wounds that deep. If you're defending yourself, if you are scared for your life, if you are the person on the bottom, as Mr. Hedo was because Kiki fell on top of him, it is certainly possible that there's going to be deep stab wounds. There's certainly possible there's going to be stab wounds on the back. Yes, if he's getting beaten up and he's fighting for his life and he's getting beaten up by two people, one of whom is falling on him, it is possible that those are indicative of self-defense and not premeditation. If counsel would have perhaps not stipulated and crossed the medical examiner, if counsel had prepared Mr. Hedo or explained what wildly swinging meant, we'd be sitting in a different situation and that's it had happened. The problem you have, though, is that the person trying to sell that factual theory is the same person who said he went out because his sister beeped the horn and the same person who fled the scene, went to the hospital, and gave a fake name. And urged that the person should die. And called out a gangster. That's gang affiliation. Nobody's really suggesting that one who believes, if one believes, that their actions are necessary to protect themselves from death or great bodily harm has to stab delicately.  As far as the Simon case, I would just quickly distinguish that. In that case, the defendant pulls out a gun, gets out of a car, walks up to the victim who has both of his hands up in the air, points the gun and says something to him as he's approaching with the gun, shoots the victim once or twice, testimony is unclear, but there's four witnesses in that case that observed this. Shoots the victim once or twice, victim falls to the ground, defendant stands above him and shoots five, six, seven, eight times, I think, was the testimony in that case. Factually, it's not similar. In factually, it is different. And I don't think Simon mandates that this court affirm Mr. Hedo's conviction for first-degree murder. In closing, I would submit to this court that, no, Mr. Hedo didn't receive effective assistance of counsel. The state did not prove him guilty beyond a reasonable doubt of first-degree murder. And at most, and there was evidence of provocation and imperfect self-defense, and at most he was guilty of second-degree murder. Thank you. Thank you both. We will take it under consideration. Thank you for the briefs and arguments, and we will get back to you directly. We are adjourned.